**19JE-CC00488**

Electronically Filed - Jeffer, on - July 04, 2019 - 02:59 PM

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY
## STATE OF MISSOURI

| | | |
|---|---|---|
| **DAN CREPPS,** | ) | |
| *individually and on behalf of* | ) | **Case No. _____** |
| *all others similarly situated,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **v.** | ) | |
| | ) | |
| **CONOPCO, INC.,** *d/b/a* **"UNILEVER,"** | ) | |
| **DOES 1 through 10,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CLASS ACTION PETITION

Plaintiff Dan Crepps, individually and on behalf of all others similarly situated, hereby files this, his Class Action Petition, against Defendant Conopco, Inc., *d/b/a* "Unilever" and DOES 1 through 10 (collectively "Defendants") for their false, misleading, and deceptive marketing of their products in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

## I.    INTRODUCTION

1.    Defendant Unilever markets and sells many different consumer products, including deodorant and antiperspirant sticks.  One such product is "Dove"-branded "Men + Care" antiperspirant featuring so-called "Stain Defense."

2.    The "Stain Defense" line of products is deceptively and misleadingly marketed as having an "added" component relative to Dove's non-"Stain Defense," "Men + Care" antiperspirant line; yet, in reality, the "Stain Defense" line of antiperspirant is nothing more than a slightly diluted version of regular "Men + Care" containing the same ingredients with nothing "added."

3.    Compared to the non-"Stain Defense" version of "Men + Care," "Stain Defense" does not contain a single addition ingredient or change of formula; the *only* difference is that the Active

1

Electronically Filed - Jeffer_on - July 04, 2019 - 02:59 PM

ingredient in "Men + Care," Aluminum Zirconium Tetrachlorohydrex GLY, is diluted from a concentration of 15.2% in Dove's non-"Stain Defense" antiperspirants to 11.4% in the "Stain Defense" line of products.

4.      Yet even more problematic, it is well-established that the "yellow stains" and "white marks" that the "Stain Defense" line of antiperspirants claims to "protect" against or be "anti-" towards, are in fact *created* and *caused by* that very same active ingredient, Aluminum Zirconium Tetrachlorohydrex GLY ("Aluminum").

5.      Thus, in reality, while perhaps doing it to a slightly lesser extent than Dove's non-"Stain Defense" antiperspirants, the "Stain Defense" line of antiperspirants actually *causes* the very problems Unilever deceptively claims it "protects" against.

6.      In short, while "Stain Defense" is marketed as having some sort of "add on" that "protects" against stains, in reality, it is nothing more than a less-effective version of "Men + Care" that causes the very problem it claims to solve.

7.      Despite all this, and despite being a diluted version thereof, Unilever sells the product for the same price as its non-"Stain Defense" product, misleading and deceiving the buying public into paying the same amount for an inferior product while under the false impression that it is somehow superior.

8.      Pursuant to the MMPA, such practice is illegal.

## II.      PARTIES, JURISDICTION, AND VENUE

9.      Plaintiff Dan Crepps is a citizen and resident of Jefferson County, Missouri.

10.      Plaintiff brings this Class Action Petition individually and on behalf of a putative class of all Missouri residents.

11.      Defendant Conopco, Inc. *d/b/a* "Unilever" (hereinafter "Unilever") is a New York corporation having its principal place of business at 700 Sylvan Ave., Englewood Cliffs, NJ 07632.

Electronically Filed - Jeffer... on - July 04, 2019 - 02:59 PM

Unilever may be served at: CT Corporation System, 120 South Central Ave., Clayton MO 63105.

12.     Defendant Unilever advertises, distributes, markets and sells the "Dove"-branded "Men + Care" antiperspirant featuring so-called "Stain Defense."

13.     The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  If necessary, Plaintiff will seek leave of Court to amend the Petition to reflect the true names and capacities of the DOE Defendants when such identities become known.

14.     Venue is proper in the Circuit Court of Jefferson County, Missouri, because the Plaintiff resides here, and a substantial part of the events or omissions giving rise to the claims in this action occurred in this venue.

15.     This forum also is superior in convenience to any other, as all of the Plaintiffs are or were Missouri citizens and are located in Missouri, and the acts complained of violated Missouri law.

16.     This asserted class action comports with Missouri Supreme Court Rule 52.08 and with R.S.Mo. § 407.025(3) of the MMPA.  Plaintiffs' identities can be ascertained from Defendant's records, but are so numerous that simple joinder of all individuals is impracticable.  This action raises questions of law and fact common among Plaintiffs.  The claims of lead Plaintiff is typical of all Plaintiffs' claims. Named Plaintiff will fairly and adequately protect all Plaintiffs' interests, and is represented by attorneys qualified to pursue this action. More specifically:

17.     Class definition:  Plaintiff Dan Crepps brings this action on behalf of himself and a class of similarly-situated persons preliminarily-[1] defined as follows: All Missouri consumers, who, within the Class Period, purchased "Dove"-branded "Men + Care" antiperspirant featuring so-called "Stain

---

[1] Plaintiff reserves the right to propose, as needed, any different or other more- or less-specific class, classes, subclass, or subclasses as Plaintiff deems appropriate for purposes of class certification.

Electronically Filed - Jeffer on - July 04, 2019 - 02:59 PM

Defense" (the "Product")[2] in the State of Missouri.  The Class Period begins five years prior to the date of the filing of this Petition, and ceases upon the date of the filing of this Petition.  Excluded from the Class are: (a) any judges presiding over this action and members of their staffs and families; (b) the Defendants and their subsidiaries, parents, successors, and predecessors; any entity in which the Defendants or their parents have a controlling interest; and the Defendants' current or former officers and directors; (c) employees (i) who have or had a managerial responsibility on behalf of the organization, (ii) whose act or omission in connection with this matter may be imputed to the organization for liability purposes, or (iii) whose statements may constitute an admission on the part of the Defendants; (d) persons who properly execute and file a timely request for exclusion from the class; (e) the attorneys working on the Plaintiffs' claims; (f) the legal representatives, successors, or assigns of any such excluded persons; and (g) any individual who assisted or supported the wrongful acts delineated herein.

18.    <u>Numerosity</u>:  Upon information and belief, the Class includes tens of thousands, if not hundreds of thousands, of individuals on a statewide basis, making their individual joinder impracticable.  Although the exact number of Class members and their addresses are presently unknown to Plaintiff, they are ascertainable from Defendants' records.

19.    <u>Typicality</u>: Plaintiff's claims are typical of those of the Class because all Plaintiffs were injured by the Defendants' uniform wrongful conduct, specifically, using misleading and deceptive marketing and advertising in offering and selling the Product to Plaintiffs.

20.    <u>Adequacy</u>:  Plaintiff Dan Crepps is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent and experienced counsel, and he intends to prosecute this action vigorously.  The interests of the Class will be protected fairly and adequately by Plaintiff and his counsel.

---

[2] As that term and label is defined in greater detail *infra.*

Electronically Filed - Jeffer  on - July 04, 2019 - 02:59 PM

21.     <u>Commonality</u>:  Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual members, such as: (a) whether the Defendant used deceptive or misleading marketing and advertising in selling the Product; (b) whether and to what extent the Class members were injured by Defendant's illegal conduct; (c) whether the Class members are entitled to compensatory damages; (d) whether the Class members are entitled to punitive damages; (e) whether the Class members are entitled to declaratory relief; and (f) whether the Class members are entitled to injunctive relief.

22.     <u>Superiority</u>:  This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy.  The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's wrongful conduct.  Thus, it would be extremely difficult for the individual Class members to obtain effective relief.  A class action presents far fewer management difficulties and provides the benefits of a single adjudication, including economies of time, effort, and expense, and uniformity of decisions.

## III.     <u>BACKGROUND</u>

23.     Defendant manufactures, distributes, and/or sells the product at issue herein, "Dove"-branded, "Men + Care" antiperspirant featuring so-called "Stain Defense."

24.     Defendant Unilever, in particular, owns the "Dove" brand and, under that brand name, manufactures and distributes, *inter alia,* the "Men + Care" antiperspirant featuring so-called "Stain Defense."

25.     The "Stain Defense" line of products is marketed as being superior to "regular" "Men + Care" antiperspirant purportedly for having "added" features that "protect" against "yellow stains" and "white marks" on clothing worn by a user of the Product.

26.     The packaging of the Product makes at least two such claims:

Electronically Filed - Jeffer on - July 04, 2019 - 02:59 PM



a.

27.     As shown, the "Stain Defense" line is marketed as being "Anti-Yellow Stains," and being "Anti White Marks."

28.     However, the active ingredient in the Product is Aluminum Zirconium Tetrachlorohydrex GLY.  It has long been recognized, and is well-accepted, that "yellow stains" and "white marks" on clothing is *caused,* at least indirectly, by aluminum in antiperspirants (generally upon being mixed with a user's perspiration).

29.     While the Product might in fact cause *less* staining than the "normal" "Men + Care" product and/or other antiperspirants on the market, it is irrefutable that the Product will inevitably lead and contribute to more staining on clothing than when it is not used at all.

30.     Thus, regardless of the extent, the Product causes, at least indirectly, the exact condition – "staining" and/or causing "white marks" – that it purports to "protect" against and/or be "anti"- towards.

31.     Further, on Unilever's "Dove"-branded website, www.dove.com, in the "About this Product" portion of the website devoted to the "Stain Defense" product, the Product is advertised as featuring "Anti-stain and Anti-mark protection." https://www.dove.com/us/en/men-care/deodorant/stick-

Electronically Filed - Jeffer on - July 04, 2019 - 02:59 PM

antiperspirant/dove-men-care-stain-defense-clean-antiperspirant-deodorant.html

32.     Moreover, in the same section of Unilever's website, the Product is promoted as follows:

"Stay dry all day and get the *added benefit* of anti-stain and anti-mark protection

with Dove Men + Care Stain Defense Clean"

*Id.* (emphasis added).

33.     As shown, in at least three separate instances, Unilever promotes the Product as having an "*added*" benefit, a so-called anti-stain and anti-mark "protection."[3]

34.     However, these statements are patently deceptive and misleading because the Product has no such "added" benefit, and has no such affirmative "protection."

35.     Rather, compared to the non-"Stain Defense" "Men + Care" antiperspirant, the Product has the same ingredients, with nothing "added."

36.     According to Unilever's Dove-branded website, www.Dove.com, and confirmed by corresponding product packaging, both the Product and the non-"Stain Defense" "Dove + Care" line contain the following ingredients:

   a.  Active Ingredient: Aluminum Zirconium Tetrachlorohydrex GLY

   b.  Inactive Ingredients:

      i.  Cyclopentasiloxane, Stearyl Alcohol, C12-15 Alkyl Benzoate, PPG-14 Butyl Ether, Hydrogenated Castor Oil, PEG-8, Dimethicone, Fragrance (Parfum), Silica, Polyethylene, Helianthus Annuus (Sunflower) Seed Oil, Steareth-100, BHT.

---

[3] In addition to statements made on Defendant's website, various distributors make similar false claims about the Product that, upon information and belief, are attributable to Defendant.  For instance, on such distributor of the product, Walgreen Co. ("Walgreens") states on their website that the Product "tackles underarm stains head on…," and that it has an "added benefit of anti-stain and anti-mark protection." *See, e.g.,* https://www.walgreens.com/store/c/dove-men%2Bcare-stain-defense-antiperspirant-deodorant-stick-invisible-fresh/ID=prod6346050-product

Electronically Filed - Jeffer on - July 04, 2019 - 02:59 PM

37.    Indeed, the *only difference* between the Product and the non-"Stain Defense" line is that the active ingredient,  Aluminum Zirconium Tetrachlorohydrex GLY, is diluted from 15.2% (in the non-"Stain Defense" line) to 11.4% in the Product.

38.    Such dilution of an active ingredient is, in no sense of the phrase, an "added benefit."

39.    Rather, the dilution of an active ingredient more likely simply reduces the effectiveness of the "normal" product, making the Product, in reality, inferior to the non-"Stain Defense" "Men + Care" line.

40.    And that deceptive fact is in addition to the worse reality that the Product causes what it falsely claims to "protect" against.

41.    Honest marketing and/or claims would include statements such as "less likely to cause staining versus normal brand" or "reduced stain causation versus normal brand"; Defendant's "Stain defense" or "anti-yellow stains" and/or "anti-white marks" claims are patently false.

42.    Merriam- Webster online dictionary defines the word "anti" as meaning, *inter alia,* "serving to prevent, cure, or alleviate" or "combating or defending against;"[4] the Product, containing ingredients that *cause* staining and white marks (even if to a lesser extent than other products), is unquestionably *not* fairly or honestly characterized as "anti-yellow stains" or anti-white marks."

43.    A normal consumer is unable to determine simply by reading the claims on the Product packaging and/or the Product's ingredient list that it actually contains no "added" ingredients relative to Defendant's non-"stain defense" line of products.

44.    While the fact is extremely well-established, a normal consumer also is unaware that Aluminum Zirconium Tetrachlorohydrex GLY is a key factor (along with a person's perspiration) that contributes to and, at least indirectly, *causes* the "yellow stains" and "white marks" the Product purports

---

[4] https://www.merriam-webster.com/dictionary/anti

Electronically Filed - Jeffer  on - July 04, 2019 - 02:59 PM

to "prevent."

45.     Moreover, while the Product very obviously leaves "white marks" on clothing, a potential purchaser is unable to test that fact prior to purchasing the Product.

46.     Upon information and belief, Defendant Unilever profits from the wide-spread practice of selling a diluted version of its regular product for the same price as non-diluted versions.

47.     Upon information and belief, it is cheaper for Unilever to produce the Product, a relatively-diluted version of its regular antiperspirant, than it is to produce its regular antiperspirant, such as the normal "Men + Care" line of antiperspirants.

48.     Upon information and belief, Defendant Unilever deceptively and misleadingly markets the Product as falsely having an "added benefit" to hide the fact from consumers that the Product is, in fact, inferior in its primary purpose, preventing perspiration, and is cheaper to produce.

49.     Defendant's marketing and selling of the Product by use of the aforementioned false, deceptive, and misleading statements is illegal and prohibited under the MMPA.

*Facts Particular to Dan Crepps and Representative of the Proposed Class*

50.     In or around June of 2019, after having viewed Defendant's statements regarding the Product on www.dove.com, and other websites as described *supra,* Plaintiff visited a retail outlet for Unilever products, particularly Walmart, 2201 Michigan Ave. Arnold, MO 63010.

51.     While there, Plaintiff observed that the Product was being sold for the same price as "regular" "Men + Care" antiperspirant.

52.     Due to the claims on the packaging as well as the statements on www.dove.com, Plaintiff falsely believed he was purchasing a product that was equally effective as the regular "Men + Care" antiperspirant but having an "added benefit"; Plaintiff believed the Product would "protect" against, as opposed to cause, "white marks" and "yellow stains."

53.     Plaintiff thereafter purchased the Product.

9

Electronically Filed - Jeffer on - July 04, 2019 - 02:59 PM

54.     At the time he purchased the Product, Plaintiff was unaware of the falsity of the Product's claims and/or the falsity of Defendant's online claims regarding the Product.

55.     If Plaintiff had been aware of the falsity and misleading nature of Defendant's claims regarding the Product, he would not have bought the Product.

56.     When Plaintiff purchased the Product, he was injured by Defendant's illegally deceptive, false, and misleading conduct in marketing and selling the Product.

57.     Although the aforementioned facts apply to named Plaintiff, for purposes of the proposed class, all that is relevant is that Plaintiff and the class members, Missouri citizens, purchased the Product at a time within the Class Period while in Missouri.


## CAUSES OF ACTION

## COUNT ONE: VIOLATION OF THE MMPA – Misleading, False, and Deceptive Marketing

58.     Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Petition, as though fully set forth herein.

59.     Defendant's acts complained of herein occurred in and emanated from the State of Missouri.

60.     Plaintiff and all members of the Class are "persons" and the Product is "merchandise" as those terms are defined under the MMPA.

61.     As set out in this Petition, Defendant's marketing of the Product constitutes deception, false pretense, misrepresentation, unfair practice, or, at a minimum, the concealment, suppression, or omission of a material fact in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA"), in particular, Defendant marketed the Product by falsely claiming it contained an "added benefit," and by claiming that it "protects" against conditions that it, in reality, it contributes to and/or causes.

10

Electronically Filed - Jeffer on - July 04, 2019 - 02:59 PM

62.    As a result of Defendant's actions, consumers, including Plaintiff, were misled or deceived that the Product they were purchasing contained an "added benefit" in comparison to the non-"Stain Defense" "Men + Care" line of antiperspirants and that it "protected" against conditions it actually contributes to and indirectly and directly causes.

63.    Defendant's deceptive acts caused Plaintiff and the Class Members an ascertainable loss within the meaning of the MMPA.  In particular, Plaintiff and the class paid for a Product that did not, in fact, contain any "added benefit" and did not, in fact, "protect" against the conditions Defendant purports it did; the Product was *not* "anti" yellow stains or white marks.

64.    Due to Defendant's illegal conduct, Plaintiffs are entitled to restitution of all funds improperly obtained by Defendants.

65.    In addition, Defendant's conduct as aforesaid was wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiffs and others similarly situated and, therefore, warrants the imposition of punitive damages.

66.    Plaintiffs have been forced to hire attorneys to enforce their rights under the MMPA.

## COUNT TWO: INJUNCTIVE RELIEF

67.    Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

68.    Defendant continues to retain payment made by Plaintiff and other members of the Class for the Product that is the result of Defendant's deceptive and misleading marketing in violation of the MMPA.

69.    Applicable law, including R.S. Mo. § 407.025, permits the Court to enter injunctive relief to prevent Defendant's continued violation of the law by continuing to falsely state that the Product contains an "added benefit" and/or "protects" against white marks and/or yellow staining.

11

Electronically Filed - Jeffer- on - July 04, 2019 - 02:59 PM

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for an order certifying this action as a class action and appointing Plaintiff Dan Crepps as class representative and his counsel as class counsel.  Plaintiff requests that this court find that the Defendant violated the MMPA, and award Plaintiffs compensatory damages, restitution, attorneys' fees, punitive damages, costs, and such further relief as the Court deems just.

Respectfully submitted,

**DANIEL F. HARVATH, ESQ.**

By: */s/ Daniel F. Harvath*
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com
*Attorney for Plaintiffs*

12